Good morning. May it please the court. My name is John Funk. I represent the appellant, plaintiff, correction officer Duane Jensen. Knowing that the court has been briefed as to the facts of the case, I'd like to focus my arguments today on where the district court erred in granting summary judgment. I'd like to first address my arguments primarily in the areas of the misapplication of the Garcetti v. Zappos. Let's cancel that Garcetti case. It's very counterintuitive that if you're doing the right thing and doing your job, then you can be fired for what you say, but if you're not, you can't. If it's something the public may be interested in, it's really counterintuitive, so it's hard to apply. However, that seems to be the law. Now, why wasn't this fellow just doing his job? Well, the argument, Your Honor, if we look- He was doing his job, but a little wrong. He wasn't following the regs precisely. He was supposed to help the guy fill out the form, and instead he just said, you get this form and you fill it out and send it in if you want. Specifically, one of the issues that you've just raised is whether or not Officer Jensen was actually performing a duty. He was performing it, but not quite according to the book. You didn't get discipline for not performing it according to the book. It's our position that there is a question of fact that exists there, because what we have in the facts is that had he been required to perform or act pursuant to his duty, he would have done one of two things. The first thing was he would have himself reported the incident. The second thing is that you would have seen that he would have complied. So if he does his duty, but he doesn't do it quite according to the book, I understand your theory is then Garcetti doesn't bar him, so he's protected because it's a matter of public interest. Part of that is, too, we believe that the Garcetti case doesn't completely knock out individuals who act in the capacity as whistleblowers, which is- He wasn't a whistleblower. He didn't report. It's our contention that based upon the actions and the steps that he took in making this private suggestion to this individual to whom he had no knowledge or personal information regarding that he was merely acting in a protected capacity with a speech, which it's our position that it falls outside of the Garcetti case. Tell me something else. Suppose we avoid the constitutional question and just look for whether there's retaliation. I'm not quite sure I understand the retaliation. There's a rumor around that he got a Rolex Jeep from an inmate's girlfriend. They do an internal investigation, and he's cleared. It isn't quite clear to me what the retaliation is in that. The retaliation actually takes several different forms, Your Honor. Specifically, one of those forms, as you've identified, is an internal affairs investigation, which was unfounded, was based upon hearsay. It's not unfounded. There's a rumor around. If you've got a rumor around that a guard is on the take or a cop is on the take, you should do an internal investigation. Again, but the problem that you have here is the individual that's doing this internal investigation, this is the very first and, as far as we know, the only time he has ever requested an internal investigation, and it just happens to be that he is friends with the individuals that were involved in the incident. In addition to the retaliation, we also have- If we're covering for everybody else who was on the take, wouldn't it still be not retaliatory but appropriate to have an investigation if there was a rumor that this guy was on the take? The problem is, though, is this is an isolated, one-time incident where this officer has stated, I've only ever requested an internal affairs investigation in this one instance, but in addition to that- Counsel, it seems to me that this is a particularly egregious conduct if it, in fact, took place, and it would seem that they would be derelict in their duty not to do an investigation, and even though this is his first one, this may be the first case that was so blatantly egregious that he was compelled to do it. But again, you have to look at it in terms of the context of what's occurring at this time. You have caricatures that are being circulated with Officer Jensen being depicted as a rat, which has him with a rat's tail, with a Rolex watch on his hand, which supports the position that these are retaliatory conduct. Defense counsel- Let's suppose that everybody in the police department is getting free coffee at some local coffee shop. Not supposed to do that. The regulations no longer allow it. And one guy snitches out some other policeman to internal affairs for something, and that guy, the one that snitched out another policeman, is the one who's reported to internal affairs for taking the free coffee. Is there anything the matter with that? Well, the problem is, unless you've got more information such as what we have in this circumstance, is we've got direct ties to the retaliation involving- My hypo, there's no question that the only reason this one got turned in for taking the free coffee is he snitched another policeman out. That would be- I gave you a clean hypo, and I'm asking you- I think that that would be a similar approach as to what we're dealing with here. So it would be unconstitutional to report to internal affairs the policeman who was taking the free coffee? Well, no, I think it's the- What we had argued and alleged was that there was an abusive process argument here with the reporting, which resulted in the investigation, which was driven by ulterior motives here, and that those motives were driven specifically towards the retaliation against Mr. Jensen, or Officer Jensen, for making this suggestion to this inmate, which was perceived as whistleblowing type activity. Counsel, would you devote a little time to the issue of the award of attorney's fees? Yes, Your Honor. It's our position that the district court erred in granting attorney's fees, as there was no finding by the court that this was a frivolous litigation. What we found is that I had objected to the order that was prepared by defense counsel because they'd included that language in there, and I'd stated there was no finding by the court that this was a frivolous litigation. What you have, and we have direct evidence of, is this is retaliatory conduct for an officer who breaks the code of silence in order to report conduct which is improper. And I'd like to reserve my remaining two and a half minutes. Okay. Thank you, counsel. Good morning, Your Honors. May it please the Court. My name is Peter Angulo, and I represent LVMP and Sergeant Kelly in this appeal. There are three issues. LVMP. That's the police department? LVMP, Counselor. Yes. Las Vegas Metropolitan Police Department. Could you help me on the attorney's fees? I can't see frivolousness. Garcetti is so hard to understand, and the cases subsequent to it have had such a hard time applying it. And for that matter, the Supreme Court had trouble figuring out Garcetti. I think it came out 5-4 with something like three or four or five opinions. I don't understand why this is frivolous. It looks to me as though what you've got is reasonable inference that the motive for turning him in was that he was a snitch. It may be that it was proper to turn him in despite that motive. You've got to take inferences in favor of the respondent to the motion for summary judgment. I don't really see why it's frivolous. And without that, I don't see how there can be attorney's fees. Thank you, Your Honor. The frivolity of the lawsuit is not dependent alone on Garcetti. In fact, prior to Garcetti, Judge Jones dismissed this litigation on summary judgment grounds. And this Court said that he was a snitch. Let's take away Garcetti altogether, then, and say there's no First Amendment issue. It's not public protected speech. And what he was reported to internal affairs, the motive for that was simply that he did his job when an inmate reported police brutality. And he himself had seen some evidence of that. He'd seen the policeman or the guard throwing up from apparently from pepper spray. And what's the matter with telling the inmate, well, if somebody abused an inmate, then there's a form you can fill out and turn in to get it investigated? There's nothing wrong with that, Your Honor. In fact, that's the policy of the detention center. Well, if there's nothing wrong with it, then there would be something wrong with putting him in internal affairs investigation on account of doing that. True, Your Honor. If those allegations had any factual support at all. Well, he did have some support. For one thing, the inmate told him that. And you can't simply disregard everything an inmate says. It may be false. It may be true. And for another thing, he had corroborating evidence. He'd seen the correctional officer throw up. And he knows that when you use this stun gun or pepper spray on people, sometimes it makes you throw up. That's true, Your Honor. But, again, that's not the basis for the lawsuit. The basis for the lawsuit brought here was that actions that occurred, temporary reassignment to some posts and this internal affairs complaint were acts of retaliation. That was the allegation, acts of retaliation, because he had done this event. Assuming he'd done the event and that was his motivation and that it was made in good faith, what the problem in this case is that there's no evidence at all that this internal affairs complaint was turned in as a result to somehow gain retaliation. There were no adverse effects from it. He didn't lose time from work. He wasn't caught. Well, considering the attitude that the other officers had about him that was shown by the drawings and so forth, it seems like there's no reason to doubt it. Your Honor, the problem with the drawings, if I might just briefly. And it's also just natural for people to hate a snitch, whether he's right or wrong. People do that. They may, Your Honor. If I might, though, the issue of the drawings, there's no evidence that these drawings or these rumors existed during the relevant time the plaintiff himself admits this alleged retaliation occurred, which ended by January of 2002 or 2001, depending on whether you take his interrogatory responses or his deposition answer. But the document of this theoretical picture of a rat or whatever it was, by his own admission, didn't start circulating until 2007. Look, we were all in third grade at one time, and we all know what everybody thought of somebody who told the teacher. Well, but, Judge, and while I appreciate that, the fact is in this case there simply isn't any evidence. There was never any evidence that, other than just a statement, well, you know, I did this, and after this I went to IAB, there wasn't any evidence that somehow there was an intent to punish him, or that there was even punishment by submitting the IAB investigation, simply being subjected to the IAB investigation. Had it been sustained against him and there were no grounds for it, that might be one thing. But where he was exonerated, his allegation to the court in his opening brief is that the retaliation came because after I was exonerated, after it was unfounded, I wanted them to shred it immediately, and they said they couldn't because they had policies that went for two years. Well, it's just not – there's no adverse consequences. I didn't get the details on the exoneration. Was he exonerated in the sense of you didn't do it? It was determined to be unfounded, that they could not identify. Why isn't that enough to raise an inference that it was retaliatory, an unfounded charge? Because there's no adverse consequences from it, Your Honor. And so, therefore, it can't be an act of retaliation. He's going through all that. For example, A hates B. So A calls the police and says B has dope and child pornography in his house. Police get a search warrant, turn the house upside down, take his computer for a month. It's totally baseless. It was just because A hated B. Well, he didn't get charged with anything, but he was put through a very miserable period on account of the false charge. Why isn't that enough? The difference between those two, Your Honor, if I might, is that on the one example you've given me, not only is he put through the emotional stress of being subjected to an investigation, but his home has been searched. His – the privacy of his home has been violated without foundation. And to me, that would at least argue an adverse consequence. Here, he's – on his own time, he's called in to IAB. He gives a statement about what happened. He provides documentation about how he purchased this Rolex watch, and the matter is unfounded. It simply isn't an adverse consequence. And so since there wasn't any tie there, additionally, we've – as Judge Jones indicated, the temporal proximity between these two events was so great as to, again, be unsuggestive of retaliation motive. The fact that he may have sincerely believed that he was retaliated against, and I won't deny that. I think in his heart of hearts today, he believes that this was all a terrible act of retaliation against him. But the reason this is frivolous is because there isn't any evidence that any of that's true. He may believe it and believe it. I may believe I'm good-looking. There just isn't any evidence that that's true. And so the fact is that in this case, that's what Judge Jones said. He said from the beginning of this case, starting with the dates that were given. I'm not sure that I can see that. It seems to me that you often don't have direct evidence of things, but you draw inferences. For example, in the majority of criminal cases, there's no direct evidence of intent, but the jury's invited to infer it from the circumstances. Here, if he really bought the Rolex fair and square and the charge was unfounded, which seems to be the resolution, and he knows that people either don't like him or are likely not to like him because he snitched out a guard, then when he's charged with something he didn't do and put through misery, why isn't that enough so that it's nonfrivolous for him to infer a retaliatory motive for snitching somebody out? Fair enough, Your Honor. The reason is that the person who allegedly does this is Sergeant Kelly. Pardon? Sergeant Kelly is the one who allegedly or who goes to IAB and reports. Sergeant Kelly has no tying with this other than his statement to IAB that he'd been told by officers that this had been by who had said to him, we've been told by inmates that he bought the watch from the inmate of a girlfriend or the girlfriend's inmate. Counsel, can I break in and ask you to describe for us the definition of frivolous in this context? Well, Your Honor, I certainly would love to do that for you. As best I understand it from the precedent that's out there. This is critical to the case. It is. The question is whether there would be a good faith basis to bring this initially. And the problem, Your Honor, is severalfold. First, the dates that were given by the plaintiff in this case as to when these events occurred, when the pepper spray allegedly occurred and so forth, he's now conceded we're absolutely wrong. There was no foundation for that at all. In fact, he wasn't even working the day that he originally said that this all occurred and he was there and saw the ---- But what I'm asking you is the definition of frivolous. Your Honor, as I believe we've indicated in our brief, the definition that we've been able to glean from case law is whether there was a good faith basis to believe that the lawsuit had merit. And again, our position is that we submitted to the Court with, I think, appropriate citations, is that in this case, while he may have in his heart had a belief in it, objectively there simply was no evidence that an objectively reasonable person looking at it would say, yeah, I can see how this was retaliation against you. First of all, he wasn't working the day, if you take the initial complaint that was filed, he wasn't even working the day that he allegedly said he was there. He's now conceded that that was absolutely wrong. That was without factual foundation, that in fact the ---- he concedes that there were rumors about him floating around from other inmates who were not named in this lawsuit, or other correction officers who were not named in this lawsuit, that were implicated that he had engaged in serious misconduct, and that being aware of that, there was an absolute duty to file the item of complaint. Knowing all those things, Your Honor, there simply was no basis to claim a First Amendment violation. Roberts. Thank you, counsel. Thank you, Your Honor. Counsel has stated that there is absolutely no evidence that the internal affairs was retaliatory. However, the outcome supports the plaintiff's contention that he went through serious emotional distress when these unfounded accusations were raised and brought against him, where he was exonerated as a result of the retaliatory conduct that was of the process of having to go through the internal affairs process. It was found that they were totally baseless, that it was based upon complete hearsay, and that it was exactly as the example that Your Honor had given, something akin to A, hating B, because of the context. You are correct. No one likes a snitch, and that snitches are often retaliated against, which is evidence of the caricatures that were circulated throughout the jail, which depict him as a rat for breaking the code of silence. This is not frivolous conduct by him bringing a lawsuit as a result of exercising his First Amendment rights. I remember there was an evidentiary dispute, and I can't remember the details at the moment. Did the rat pictures get into evidence on the summary judgment motion? We attempted to bring them in, Your Honor, and, in fact, we had provided a new one had recirculated in defense. Did they get in? No. The judge struck them. One of the caricatures, I believe, did make it in. One of the points on appeal that the judge aired by striking them? Exactly. And part of it is because it goes to show the retaliatory conduct. The thing is, defendants' counsel even admitted that they were aware that there were the caricatures that were in existence. The problem is, the question that I have is, how many are they aware of that are out there? All they responded with was, we chastised the officer who's been drawing these caricatures and told them, stop doing it. That simply isn't enough, Your Honor. It shows the conduct is retaliatory. Thank you. Thank you, counsel. Jensen Brucer, Las Vegas Metropolitan Police Department, is submitted.
judges: Fletcher B. , Kleinfeld, Duffy